STATE OF LOUISIANA

COURT OF APPEAL, THIRD CIRCUIT

12-475

CONSOLIDATED WITH

12-476

CYNTHIA DUPLECHAIN

VERSUS

TOWN OF CHURCH POINT

**********

APPEAL FROM THE
OFFICE OF WORKERS' COMPENSATION, DISTRICT 4
PARISH OF ACADIA, NOS. 08-21806 AND 10-01331
SHARON MORROW, WORKERS' COMPENSATION JUDGE

**********

JAMES T. GENOVESE
JUDGE

**********

Court composed of Jimmie C. Peters, J. David Painter, and James T. Genovese, Judges.

AFFIRMED.

Gloria A. Angus
Angus Law Firm, L.L.C.
Post Office Box 2337
Opelousas, Louisiana 70571-2337
(337) 948-8800
COUNSEL FOR PLAINTIFF/APPELLANT:
    Cynthia Duplechain

Christopher R. Phillip
Law Office of Christopher R. Phillip
120 Caillouet Place
Post Office Box 2369
Lafayette, Louisiana 70502-2369
(337) 235-9478
COUNSEL FOR DEFENDANT/APPELLEE:
    Town of Church Point

**GENOVESE, Judge.**

In this workers' compensation case, Plaintiff/Employee, Cynthia Duplechain, appeals the judgment of the Office of Workers' Compensation (OWC) finding that she was not entitled to temporary total disability benefits (TTD), supplemental earnings benefits (SEB), or cervical and lumbar surgeries. Ms. Duplechain also appeals the penalty and attorney fee awards and seeks additional attorney fees for work done on appeal. Defendant/Employer, Town of Church Point (Church Point), has answered the appeal, seeking a reversal of the award of a penalty and attorney fees. For the following reasons, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

On February 5, 2005, Ms. Duplechain, a certified Church Point police officer, was working as a dispatcher when the chair she was sitting in collapsed, and she fell to the concrete floor. It is undisputed that Ms. Duplechain was in the course and scope of her employment at the time and place of her injury. Church Point paid Ms. Duplechain TTD until August 1, 2008; thereafter, Church Point paid Ms. Duplechain SEB until it terminated all benefits on November 30, 2009.

On October 9, 2008, Ms. Duplechain filed a disputed claim[1] relative to the failure of Church Point to authorize pain management treatment. On February 10, 2010, Ms. Duplechain filed a second disputed claim[2] relative to the conversion of her benefits from TTD to SEB, the termination of SEB, the refusal to authorize cervical and lumbar surgeries, and penalties and attorney fees.

This matter was tried on October 28, 2010, December 13, 2010, and July 12, 2011. On November 2, 2011, the WCJ denied Ms. Duplechain's claims for TTD, SEB, cervical surgery, and lumbar surgery. However, the WCJ granted

---

[1]This pleading was filed under docket number 08-21806.

[2]This pleading was filed under docket number 10-01331. These two proceedings were consolidated by the Workers' Compensation Judge (WCJ) and tried together.

Ms. Duplechain's claim for pain management treatment and assessed a $2,000.00 penalty and a $5,000.00 award of attorney fees against Church Point. Judgment was signed by the WCJ on December 12, 2011.

## ASSIGNMENTS OF ERROR

Ms. Duplechain asserts that the WCJ erred in: (1) denying TTD; (2) denying SEB; (3) denying cervical surgery; (4) denying lumbar surgery; and (5) awarding insufficient penalties and attorney fees. After filing her appeal, Ms. Duplechain filed an Answer and Request for Attorney Fees on Appeal wherein she asserted that the judgment "should be modified to increase the amount of attorney fees from $5,000.00 to $20,000.00" and also requested "attorney fees in the amount of $3,000.00 for filing this appeal."

In its Answer to Appeal, Church Point asserts error by the WCJ in awarding a penalty and attorney fees to Ms. Duplechain.

## LAW AND DISCUSSION

> In workers' compensation cases, the factual findings of the trial court are subject to the manifest error standard of review. *Smith v. Louisiana Dep't of Corrections*, 93-1305, p. 4 (La.2/28/94), 633 So.2d 129, 132; *Freeman v. Poulan/Weed Eater*, 93-1530, pp. 4-5 (La.1/14/94), 630 So.2d 733, 737-38. In applying the standard, the appellate court must not determine whether the trier of fact's conclusion was right or wrong, but that it was reasonable. *Freeman*, 630 So.2d at 737-38; *Stobart v. State*, 617 So.2d 880, 882 (La.1993); *Mart v. Hill*, 505 So.2d 1120, 1127 (La.1987). Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous. *Stobart*, 617 So.2d at 882. Therefore, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." *Sistler v. Liberty Mut. Ins. Co.*, 558 So.2d 1106, 1112 (La.1990).

> *Richard v. Vermilion Hosp.*, 10-385, pp. 3-4 (La.App. 3 Cir. 6/9/10), 41 So.3d 1219, 1223, *writ denied*, 10-1611 (La.10/8/10), 46 So.3d.

1269 (quoting *Landry v. Furniture Ctr.*, 05-643, pp. 5-6 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 309, *writ denied*, 06-358 (La.4/28/06), 927 So.2d 290). Additionally, "[t]he decision to impose penalties and attorney fees is essentially a factual issue subject to the manifest error or clearly wrong standard of review." *Weaver v. S. Erectors, Inc. of Florida*, 10-783, p. 13 (La.App. 3 Cir. 12/8/10), 53 So.3d 547, 555 (citing *Authement v. Shappert Eng'g*, 02-1631 (La.2/25/03), 840 So.2d 1181).

*Richard v. Calcasieu Parish Sch. Bd.*, 11-469, p. 2 (La.App. 3 Cir. 10/5/11), 79 So.3d 359, 361 (alterations in original).

***Medical Benefits***

Ms. Duplechain asserts that the WCJ erred in denying her claims for cervical surgery and lumbar surgery. On the date of her injury, Ms. Duplechain was seen by Dr. Marcello Polanco. She was seen twice before he sent her to physical therapy for her complaints of neck, shoulder, and lower back pain. Ms. Duplechain sought treatment with Dr. Reginald Segar in March 2005, complaining of neck pain, upper back pain, and lower back pain. Ms. Duplechain underwent a lumbar MRI, which was interpreted as normal, and continued with more physical therapy.

Ms. Duplechain then saw Dr. Greg Gidman, an orthopedic surgeon, in November 2005, who opined that she had a lumbosacral contusion caused by the accident. Dr. Gidman next saw Ms. Duplechain in April 2006, for complaints of neck pain on her left side and lower back pain. Ms. Duplechain underwent a cervical MRI, which indicated a small focal disc herniation on the right at C6-7. In May 2006, as per Dr. Gidman's recommendations, Ms. Duplechain underwent a cervical myelogram and CT scan and a lumbar myelogram and CT scan. The cervical and lumbar myelograms were normal. The lumbar CT scan showed bulges at L3-4, L4-5, and L5-S1; however, there was no nerve root impingement. The cervical CT scan indicated a disc herniation and osteophyte at C6-7. When

Ms. Duplechain returned to see Dr. Gidman in June 2006, complaining of continued neck pain, he referred her to Dr. Luiz deAraujo, a neurological surgeon.

Ms. Duplechain saw Dr. deAraujo in July 2006. After an MRI of Ms. Duplechain's left shoulder, Dr. deAraujo opined that Ms. Duplechain needed cervical surgery for her symptoms of neck pain radiating into her left arm caused by nerve impingement at C6-7.

Church Point sought a second medical opinion (SMO) relative to Ms. Duplechain's neck pain, which was obtained from Dr. Anthony Ioppolo, a neurological surgeon, in August 2006. Dr. Ioppolo disagreed with Dr. deAraujo and opined that cervical surgery was not needed.

An independent medical examination (IME) was performed by Dr. Dean Moore, a neurological surgeon, in October 2006. Dr. Moore opined that Ms. Duplechain had thoracic outlet syndrome and also disputed her need for cervical surgery.

In April 2008, Dr. deAraujo sought to have Ms. Duplechain undergo another lumbar MRI; however, Ms. Duplechain would not submit to this diagnostic test. In May 2008, Dr. deAraujo released Ms. Duplechain to light-duty work. In June 2008, he opined that Ms. Duplechain had reached maximum medical improvement (MMI).

Ms. Duplechain ultimately submitted to a second lumbar MRI in August 2008. In October 2008, Ms. Duplechain underwent a lumbar epidural steroid injection. Ms. Duplechain complained that the "epidural" offered her no relief. At this point, Dr. deAraujo recommended lumbar surgery.

Church Point then sought a SMO from Dr. Ioppollo relative to Ms. Duplechain's back pain, which was performed in March 2009. Dr. Ioppolo opined that lumbar surgery was not necessary.

4

Church Point obtained an IME with Dr. Patrick Juneau, III, in July 2009. Dr. Juneau opined that Ms. Duplechain did not need lumbar surgery and was at MMI.

In its reasons for judgment, the WCJ stated it found "little correlation of the diagnostic findings with [Ms. Duplechain's] complaints, and the diagnostic findings did not suggest the alleviation of her complaints by surgical intervention." The WCJ weighed the findings of Ms. Duplechain's treating physician, Dr. deAraujo, who recommended cervical and lumbar surgeries for Ms. Duplechain, against the findings of Dr. Ioppolo, Dr. Moore, and Dr. Juneau, each of whom disputed Ms. Duplechain's need for either surgery. Simply put, the WCJ weighed the evidence before her and chose between two permissible views of the evidence. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. *Stobart*, 617 So.2d 880. We are not allowed to substitute our view of the evidence for that of the factfinder in the face of conflicting medical evidence. For the foregoing reasons, we find that the opinions of Dr. Ioppolo, Dr. Moore, and Dr. Juneau all support the WCJ's denial of Ms. Duplechain's claims for cervical and lumbar surgeries. Though there are two permissible views of the evidence, we find no manifest error, and we affirm the WCJ's ruling.

### Indemnity Benefits

Ms. Duplechain asserts that the WCJ erred in denying her claim for TTD.

> A workers['] compensation claimant seeking temporary or permanent total disability benefits bears the burden of proving, by clear and convincing evidence, his inability to engage in any type of employment because of his physical condition. *Greis v. Lake Charles Mem'l Hosp.*, 97-1258 (La.App. 3 Cir. 3/6/98), 709 So.2d 986, *writs denied*, 98-937, 98-939 (La.5/15/98), 719 So.2d 467.

5

*Olivier v. City of Eunice*, 10-1433, p. 4 (La.App. 3 Cir. 6/8/11), 66 So.3d 1244, 1248. Ms. Duplechain also asserts that the WCJ erred in denying her claim for SEB. "'The purpose of [SEB] is to compensate the injured employee for the wage earning capacity he has lost as a result of his accident.' *Banks v. Industrial Roofing & Sheet Metal Works, Inc.*, 96-2840 (La.7/1/97), 696 So.2d 551, 556." *Poissenot v. St. Bernard Parish Sheriff's Office*, 09-2793, p. 4 (La. 1/9/11), 56 So.3d 170, 174 (alteration in original). Pursuant to La.R.S. 23:1221(3)(a), an employee is entitled to receive SEB if the employee sustains a work-related "injury resulting in the employee's inability to earn wages equal to ninety percent or more of wages at time of injury[.]"

Tiffany Harrington, the vocational rehabilitation counselor, identified numerous jobs for Ms. Duplechain within the restrictions approved by Dr. Ioppolo. However, Ms. Duplechain testified that though she applied for jobs, she was either denied the job or told that there were no jobs available.

In its reasons for judgment, the WCJ stated:

> The Court does not place much, if any, weight on [Ms. Duplechain's] testimony. The evidence reflects that Ms. Duplechain obstructed the progress of her claim at every opportunity. She missed doctors' appointments. She missed the voc rehab appointments. She missed the FCE. She cancelled the MRI set up by her treating physician. She did not pick up her certified mail from the rehab counselor, and she also testified that she didn't think she could do any of the jobs anyway.

The WCJ concluded that Ms. Duplechain was physically able to perform the jobs identified to her. We find the record supports the WCJ's determination that Ms. Duplechain was provided with appropriate vocational services and that Church Point carried its burden of proving that she was physically able to perform certain jobs available to her. Thus, we find no manifest error in either the WCJ's

6

determination that Church Point's reduction of TTD to SEB was proper, or the WCJ's determination that Church Point's termination of SEB was proper.

*Penalties and Attorney Fees*

On appeal, Ms. Duplechain contends that the penalty and attorney fees awarded by the WCJ are inadequate. In its Answer to Appeal, Church Point argues that the WCJ erred in awarding a penalty and attorney fees pursuant to La.R.S. 23:1201(E).

The WCJ found that Ms. Duplechain was "entitled to medication management with Dr. Segar" and assessed a $2,000.00 penalty and a $5,000.00 award of attorney fees against Church Point "for failing to authorize pain management specifically requested by [Ms. Duplechain's prior counsel] in her letter of October 25th of 2007." The WCJ further reasoned:

> While Ms. Duplechain didn't always do what she needed to do, the adjusters didn't always do what they needed to do. It was apparent there was a period of time where nobody was tending to Ms. Duplechain's file. [Her prior counsel] was trying to get pain management, there was no response. . . ."

We find no abuse of discretion in the WCJ's assessment of the penalty and attorney fees against Church Point.

"The amount [of attorney fees] award[ed] by the WCJ will not be disturbed unless we find that the WCJ abused her discretion. *George v. M & G Testing and Services, Inc.*, 95-31 (La.App. 3 Cir. 7/19/95), 663 So.2d 79, *writ denied*, 96-0039 (La.3/8/96), 669 So.2d 403." *Evergreen Presbyterian Ministries v. Wallace*, 07-313, p. 5 (La.App. 3 Cir. 10/10/07), 968 So.2d 256, 260. The record before us is devoid of any evidence to support an increase in the attorney fees awarded by the WCJ. Given the deference we must afford the WCJ in its ruling, we find no error in the WCJ's determination that Church Point was liable for penalties and attorney fees pursuant to La.R.S. 23:1201(E) for failing to authorize pain

management, nor do we find an abuse of discretion in the amount of the penalty or in the amount of the attorney fees awarded. Thus, we find no merit in the contention of either Ms. Duplechain on appeal or Church Point in answer to the appeal relative to the WCJ's award of the penalty and attorney fees, and we affirm the WCJ's ruling.

Finally, we address Ms. Duplechain's request for additional attorney fees for work necessitated by her appeal. Ms. Duplechain asserts that she is entitled to an award of attorney fees in the amount of $3,500.00 for work done on appeal. We have already determined that Ms. Duplechain's assignments of error are without merit. Because she was unsuccessful in her appeal, we find no legal basis for granting Ms. Duplechain's request for an additional award of attorney fees for this appeal. *See Minor v. J & J Carpet, Inc.*, 11-974 (La.App. 3 Cir. 2/1/12), 84 So.3d 680 (citing *Soileau v. R & H Refractory Servs., Inc.*, 01-355 (La.App. 3 Cir. 10/3/01), 796 So.2d 903, *writ denied*, 01-2954 (La. 1/25/02), 807 So.2d 841).

## DECREE

Accordingly, for the reasons stated above, the December 12, 2011 judgment of the Office of Workers' Compensation is affirmed in its entirety. All costs of this appeal are assessed to Cynthia Duplechain.

**AFFIRMED.**

8